OPINION OF THE COURT
Jose Rodriguez, J.
The above-captioned proceeding was tried before this court on a petition that alleged nuisance. Immediately prior to trial and as the trial commenced it became apparent that a number of issues were raised by what is, on its face, an alleged “Collier’s” type apartment. The posttrial memoranda submitted subsequent to the close of trial further refine and detail these issues.
The trial testimony consisted of petitioner’s principal, Christopher Athineos, who testified as to the fundamental elements of petitioner’s direct case and also testified as to its substance.[1] He stated that Unicorn 151 purchased the premises in 1985 and in the intervening years has commenced four holdover proceedings against respondent based upon the alleged condition in which she keeps her apartment. Mr. Athineos testified that as a result of these conditions DHPD (Department of Housing Preservation and Development) issued a violation in 1989 which has not been certified as corrected despite reinspections in 1992 and in 1997. Mr. Athineos testified that he observed the apartment to be replete with garbage bags, newspapers, plastic bags full of items, boxes, *306 pans, pots, plastic containers and other items from floor to ceiling throughout the apartment. He further testified that he observed these conditions in February 1989 when he was in the apartment for the purpose of performing repairs. He was in the apartment again in January 1991, and on April 11, 1996 and on at least another two occasions in 1996. On the April 11, 1996 visit petitioner asserts the conditions were worse than they had been in 1995. In 1995 he was in the apartment in March and the conditions were as they had been in 1989. Petitioner introduced into evidence photographs taken of the apartment in April 1996 which demonstrate the existence of large amounts of personal and household items throughout the apartment.
Petitioner testified that in March 1997 he could not obtain access to the apartment, but that he did so in May of 1997. At that time he observed conditions that were similar to those that existed in 1996. Thereafter, the instant proceeding was commenced. On cross-examination petitioner acknowledged that respondent pays the lowest rent in the building and that respondent obtained a rent-reduction order from the Division of Housing and Community Renewal (DHCR) which was sustained upon petitioner’s filing of a petition for administrative review (PAR). Petitioner also acknowledged that the respondent has only one closet in her apartment and that although DHPD placed a violation on the apartment in 1989 (which was reinspected in 1992 and 1997 and the violation not removed) the petitioner has not been fined. Petitioner presented no witnesses on its direct case, other than Mr. Athineos. Respondent testified on her own behalf. She indicated she has resided in this apartment since 1979. She stated that she previously had storage in the basement, but complied with petitioner’s request that she remove her possessions from that area. She further testified that she has one closet in her apartment, which she built herself, and that she does have to store some of her possessions in bags and some of her clothes on racks, of which she has four. Respondent testified that she has to hold items to comply with the recycling laws. She brings approximately two to four bags of garbage to the street each week and since the 1997 DHPD violation was issued she has hired a cleaning woman who comes once every four to six weeks. Respondent disputes the characterization of the photographs taken of her apartment (petitioner’s 5) and contends that the apartment was in the condition depicted as she had to ready the apartment for painting and other repairs. Respondent *307 submitted photos of her apartment that she contends depict the apartment in substantially the same condition as it is now in. These photographs were taken in March 1998.
Respondent called Joan Byron, an architectural director at Pratt Institute, as a witness. Ms. Byron testified that she has been to the subject apartment approximately 12 times since 1994 or 1995; the most recent visit was in the spring of 1998. Ms. Byron’s testimony was that on her first visits the apartment was “overwhelmingly cluttered” but that in late 1996 or early 1997 she observed the “amount and organization of stuff to have changed.” She noticed less newspapers and less clothing. On cross-examination she acknowledged that petitioner’s 5, the photographs taken in 1989 and 1996, were “worse than cluttered.” However, she also indicated she was in the apartment more frequently in 1997 and 1998.
On rebuttal petitioner called Angelyn Johnson, an attorney who resided in the subject building for approximately 2V2 years beginning in 1990. She testified that she had noticed items in the hallway of the 3rd floor including a bike and a carton of newspapers. She also testified that she could smell cats. She testified she never confronted the respondent because she did not want any friction. On cross-examination, Ms. Johnson agreed that she had been employed by the petitioner’s then attorney at the time of her residency in the subject building. Ms. Johnson further indicated that at the time she resided at the building she received a preferential rent.
The parties both testified to the chronology and import of the prior litigation as well as introducing into evidence copies of pertinent court papers from prior proceedings. The initial proceeding was a nonpayment petition (index No. L&T 69790/ 89) which was dismissed after trial. The next proceeding was a holdover in which there was a judicial inspection. Apparently, the Judge who conducted the inspection determined that the alleged nuisance did not exist at the time of inspection as the petitioner’s request for a judgment was denied. (Index No. L&T 83746/89 [petitioner’s 8].) The next proceeding was dismissed due to a defective predicate notice. (Index No. L&T 81296/92.) A later proceeding was commenced and dismissed based upon a defective notice to cure. (Index No. L&T 68431/ 93.) Subsequently, a holdover proceeding was brought and settled in court pursuant to stipulation. (Index No. L&T 72330/ 96.) As with the earlier petition, the settlement was contingent upon an inspection. In this inspection, attended by the parties and their attorneys, the case was to be deemed settled if no *308 nuisance was found at the inspection. At a point subsequent to the case being deemed settled petitioner moved for a judgment which was denied. In its order the court determined that the motion, based upon a subsequent violation, could not support a judgment in that case, where the lapse of time since the inspection clearly indicated the matter was deemed settled. A subsequent nonpayment was discontinued upon respondent’s motion to vacate a default judgment. (Index No. L&T 74588/ 97.)[2]
Following the most recent nonpayment proceeding the instant matter was commenced. In this proceeding, which is premised solely upon a nuisance theory, no notice to cure having been served, the petitioner recites allegations deriving from conduct from 1989 to the present date. A portion of petitioner’s allegation is that the respondent has maintained her apartment in a condition which has resulted in violations being placed on the building by the DHPD. The notice to terminate, dated August 26, 1997, alleges that respondent is “committing and permitting a nuisance in the premises and in the building containing the premises and/or have engaged in a course of conduct the primary purpose of which is intended to harass the owner and landlord and other tenants or occupants of the subject building by substantially interfering with their safety and comfort.”
The particulars of this conduct are detailed and consist in substance of allegations that respondent accumulated a huge amount of personal and household items that create a hazardous condition resulting in a DHPD violation being placed, which has yet to be removed. Petitioner further alleges that because of this conduct it has been required to commence four separate proceedings against respondent because of the condition of the premises. In paragraph three of the termination notice the substance of the nuisance allegation is delineated by the allegations of Christopher Athineos, a principal of Unicorn 151 and the only witness presented on petitioner’s direct case.
In her posttrial memorandum respondent argues that the proceeding should be dismissed for one of the following reasons: petitioner failed to prove a nuisance or that respondent *309 engaged in objectionable conduct; respondent failed to serve a notice to cure in compliance with the terms of the parties’ lease. In the alternative, respondent argues, without admitting the allegation, that she cured prior to trial and therefore either the petition should be dismissed or respondent should be granted a postjudgment cure pursuant to RPAPL 753 (4). Respondent also contends that this proceeding was commenced in retaliation for the fair market rent appeal filed by respondent with the DHCR. Petitioner argues that it has established a chronic and habitual pattern by respondent of maintaining her apartment in a condition dangerous to the life, health and safety of tenants and to the building and that, as a nuisance proceeding, a notice to cure is not required, and if the nuisance is sustained, that respondent is not entitled to the benefit of RPAPL 753 (4).
NOTICE TO CURE
A number of cases discuss the distinction between a nuisance proceeding and a proceeding commenced as a violation of the term(s) of a lease. The distinction between such proceedings is primarily whether the condition alleged is chronic and, thus, considered incapable of a cure, or is the condition curable and, therefore, the type of conduct that falls within the confines of the terms of a lease that provides for a notice to cure to be served upon a tenant if and when such behavior is alleged. A corollary benefit that inures to a tenant when conduct is determined to be a breach of lease or violation of a substantial obligation of tenancy is that the tenant will be afforded a post-judgment cure period pursuant to RPAPL 753 (4) if and when a judgment is entered on the violation of the lease. (See generally, Lew Realty v Chiremba, NYLJ, Feb. 11, 1998, at 26, col 4; Fairmont Manor Co. v Michael, NYLJ, July 13, 1998, at 28, col 6 [App Term, 1st Dept]; Tri-Faith Hous. Co. v Fitzgerald, NYLJ, Oct. 30, 1998, at 25, col 1 [App Term, 1st Dept].)
In addition to these general propositions, in Waring Barker Co. v Santiago (NYLJ, Jan. 23, 1998, at 25, col 1 [App Term, 1st Dept]) the court discussed a matter similar in its essentials to the matter pending before this court. The court in Waring (supra) considered a case that had been brought as a nuisance proceeding. In that case the respondent argued that it was entitled to a precommencement notice to cure pursuant to the terms of the party’s lease. Respondent further argued that the petitioner’s failure to serve such a notice warranted dismissal of the proceeding. The petitioner argued, as is being argued here, that such a notice was not required as the proceeding *310 was brought pursuant to Rent Stabilization Code (RSC) (9 NYCRR) § 2524.3 (b), as is alleged herein. The court determined that:
“The failure to serve the threshold notice of default mandates vacatur of the possessory judgment * * * Landlord’s argument that a notice to cure was not required because it was proceeding upon the ground of nuisance under Rent Stabilization Code § 2524.3 (b) is unavailing. The ‘nuisance’ complained of — viz, failure to grant access and offensive behavior against another building occupant, is indistinguishable from ‘objectionable conduct’ as that term is defined in the parties’ lease * * *
“Moreover, ‘[t]he statutory scheme simply establishes the minimum rights to be accorded tenants, and does not preclude a contract that gives a tenant greater rights’.” (Waring Barker Co. v Santiago, supra, at 25, cols 1-2.)
It is the opinion of this court that the rationale applied by the Waring court is applicable to the instant proceeding. The parties herein have a lease that provides for the service of a notice to cure upon the occurrence of certain specified acts or upon the allegation of a breach of the terms of the lease. As in Waring (supra) the conduct is defined. In the instant proceeding the lease provides, “Landlord must give tenant written notice of default stating the type of default. The following are defaults and must be cured by tenant within the time stated * * * [improper conduct by tenant annoying other tenants, 10 days * * * [if the default cannot be cured in the time stated] Tenant must begin to cure within that time and continue diligently until cured.” (Lease 16, dated Dec. 17, 1983.) As such a provision exists, it is incumbent on the petitioner to provide such notice in accordance with the terms of the parties’ lease.
Although the instant proceeding is framed in the terms of a nuisance the substance and gravamen of the action sounds more as a breach of lease or breach of a substantial obligation of tenancy. Petitioner implicitly recognizes this because in the previously commenced holdover proceedings notices to cure were served prior to the commencement of actions pleaded as violations of tenancy. It is indisputable that the acts alleged in prior cases are the same acts alleged in the instant petition. This court is cognizant of the distinction between a nuisance incapable of cure and a breach of lease. However, in the instant proceeding the facts forming the basis of the petition are substantially the same, if not identical, to those alleged in the numerous petitions commenced prior to that presently before this court.
*311 Petitioner’s argument is that the conduct alleged herein is chronic, and, consequently, incapable of cure. However, in pointing back in time to those prior proceedings that petitioner wishes this court to take note of and to rely upon, it becomes apparent that those proceedings were predicated upon acts and allegations that are in substance the same as those presently before this court. At that time they were deemed to be breaches of a substantial obligation of tenancy and to be capable of a cure. Consequently, at this juncture, and based upon the case law discussed herein, those acts that form the basis of the within proceeding are more properly deemed a breach of the terms of respondent’s tenancy for which she was entitled to a notice to cure and which was admittedly not served. As a result the petition must be dismissed.
NUISANCE ALLEGATIONS
The petition is commenced pursuant to ESC § 2524.3 (b) which states:
“Without the approval of the DHCE, an action or proceeding to recover possession of any housing accommodation may only be commenced after service of the notice required by * * * upon one or more of the following grounds, wherein wrongful acts of the tenant are established as follows * * *
“(b) The tenant is committing or permitting a nuisance in such housing accommodation or the building containing such housing accommodation; or is maliciously, or by reason of gross negligence, substantially damaging the housing accommodation; or the tenant engages in a course of conduct, the primary purpose of which is intended to harass the owner or other tenants or occupants * * * by interfering substantially with their comfort or safety.”
The notice of termination underpinning this proceeding specifies that respondent is “committing and permitting a nuisance in the premises and in the building containing the premises and/or have engaged in a course of conduct the primary purpose of which is intended to harass the owner and landlord and other tenants or occupants of the subject building by substantially interfering with their safety and comfort.” (Notice of termination, dated Aug. 26, 1997.)
Petitioner’s direct case consisted of the testimony of Mr. Athineos and documentary evidence. Although the number of witnesses is not the dispositive issue at a trial, it is noteworthy where, as here, the allegations span the better part of a decade, and it is alleged that the condition is chronic and incap *312 able of cure, and where, as here, a number of people have lived at the premises over these years. In sum, the testimony was that Mr. Athineos, who is an interested party, has been in respondent’s apartment a few times a year at best over the past 10 years. He observed an amount of personal items that is excessive and that has resulted in the placing of violations by DHPD. While this may be true and of concern to this court, it is noted, however, that the respondent’s witness corroborated her testimony that as of the 1997 violation she has taken corrective measures and has hired a cleaning lady. Respondent entered into evidence photographs of the apartment from March 1997 that demonstrate a condition significantly different to that depicted by petitioner’s photographs from 1996, at which time it is noted that respondent contended she was preparing the apartment for repairs.
It is further noted by this court that throughout the history of litigation between the parties to the instant proceeding as delineated supra the apartment has been visited by Judges of this court and by attorneys representing the parties. In none of the prior proceedings has there been a judgment entered. Indeed, in one of the more recent proceedings, settled before the Honorable Bruce Kramer, the case was not restored for a violation of the settlement, but was restored based upon a subsequent violation entered approximately a year after the case had been settled. Moreover, petitioner’s 8 in evidence, an order by the Honorable Dianne Gasworth, specifically denied petitioner’s request for a judgment following her personal inspection of the apartment. In her order she wrote, “No odors were found emanating from the apartment or in the apartment. Based upon this inspection Petitioner[’]s request for final judgment at this time is denied.”[3]
Even assuming petitioner could simply proceed without having served a notice to cure it would be questionable as to whether it could establish a nuisance. The language of the *313 statute as alleged, in the termination notice and the petition requires the demonstration of “a nuisance in the premises * * * [and that respondent has] engaged in a course of conduct the primary purpose of which is intended to harass the owner and landlord and other tenants or occupants of the subject building by substantially interfering with their safety and comfort.” Almost by its very language, this statute anticipates more proof than has been offered by the petitioner. The burden is to demonstrate a course of conduct that has harassment as its goal and, finally, that substantially interferes with the safety and comfort of others who reside in the building. Even assuming the course of conduct to be established, petitioner must still prove intent to harass and actual interference with the safety and comfort of other tenants. (See, e.g., West 15th St. Assocs. v Williams, NYLJ, July 9, 1997, at 25, col 2; Tompkins Sq. Neighbors v Zaragoza, 43 AD2d 551 [1st Dept 1973], appeal dismissed 34 NY2d 737.) Testimony by others who reside in or who have resided in the building for the past 10 years is distinctively absent. This is not to suggest that a sole witness can never establish such proof, but where, as here, the witness is an interested party who has been the apparent impetus behind 10 years of litigation it becomes problematic.
Finally, while this court does not determine specifically that respondent violated a substantial obligation of her tenancy or that she breached her lease, it does determine that commencing March 1997 she took steps to and, in fact, did cure any lease violation as established by her testimony and evidence, and, as testified to by her witness, whom this court finds to be fully credible. As a consequence, it is determined that respondent cured prior to the commencement of trial and that the petition is dismissed on this ground.
The remaining issues presented herein are rendered moot by the foregoing decision and order and are not addressed.

. By order dated November 4, 1998 the Honorable Johnny L. Baynes determined that prior proceedings between the parties hereto, discussed infra, are not precluded from discussion under the doctrines of res judicata and collateral estoppel, but that they may be used to establish a pattern and/or course of conduct.

. Although petitioner has alleged in its notice that it has had to commence a number of holdover proceedings over the years based upon respondent’s alleged conduct, it appears from a review of those cases that two were dismissed on service or notice defects and that two were settled pursuant to stipulation. Surely, the dismissals are not attributable to the conduct of respondent.

. It is further noted that during this time period Mr. Athineos complained to DHPD about Ms. Small and alleged “resident of the apt., Barbara Small, has garbage accumulation in one of the rooms. The garbage is raw, and maggots have been formed!?] For about three months.” (Complaint to DHPD, dated Sept. 7, 1989.) On the complaint to DHPD it is noted that the complaint was previously made. Ultimately, this complaint resulted in the violation which is one of the bases of this proceeding. It is finally noted in this context that subsequent complaints were made by Mr. Athineos to DHPD that did not result in the placing of violations by that agency. See complaint dated February 24, 1992 where obnoxious odors are alleged and which DHPD reported “no such condition at time of inspection.”